FILED

1 Mitchell A. Kamin - State Bar No. 202788
    mak@birdmarella.com
2 Nicole R. Van Dyk - State Bar No. 261646   2013 MAY -2 PM 3:42
    nrv@birdmarella.com
3 BIRD, MARELLA, BOXER, WOLPERT,   CLERK U.S. DISTRICT COURT
    NESSIM, DROOKS & LINCENBERG, P.C.   CENTRAL DIST. OF CALIF.
4 1875 Century Park East, 23rd Floor   LOS ANGELES
  Los Angeles, California 90067-2561
5 Telephone: (310) 201-2100   BY_____
  Facsimile: (310) 201-2110
6
  Attorneys for Plaintiff Interstate
7 Restoration, LLC

8
## UNITED STATES DISTRICT COURT
9
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION
10

11 INTERSTATE RESTORATION, LLC,        CASE NO. SACV13-706-AG (RNBx)
12         Plaintiff,                   **COMPLAINT FOR:**
13    vs.                               (1) **Breach of Contract**
14 THOMAS A. SEAMAN, individually       (2) **Promissory Estoppel**
15 and as receiver for Medical Provider
   Financial Corporation III, and DOES 1- (3) **Intentional Misrepresentation**
16 10,
17         Defendants.                  (4) **False Promise**
18                                      (5) **Negligent Misrepresentation**
19                                      (6) **Restitution**
20                                      (7) **Constructive Trust**
21                                      **DEMAND FOR JURY TRIAL**

2933890.2

COMPLAINT

Plaintiff Interstate Restoration, LLC ("Interstate") by and through its counsel, hereby alleges and complains against Defendant Thomas A. Seaman ("Seaman") individually and as receiver for Medical Provider Financial Corporation III as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the above-entitled action pursuant to 28 U.S.C. § 959(a) and settled precedent holding that a receivership court can exercise supplemental jurisdiction over all claims against its appointed receiver. *See Porter v. Sabin*, 149 U.S. 473, 479 (1893); *Robinson v. Michigan Consol. Gas Co. Inc.*, 918 F.2d 579, 586 (6th Cir. 1990). The Honorable David O. Carter appointed Seaman as permanent receiver in *Securities and Exchange Commission v. Medical Capital Holdings, Inc, et al.*, Case No, SACV 09-818 DOC (RNBx).

2. Venue in this District is proper pursuant to 28 U.S.C §§ 1391(b)(1), 1391(e)(1)(A), and 959(a).

## PARTIES

3. Interstate is a Colorado limited liability company with its principal place of business in Fort Worth, Texas. Interstate is an emergency response restoration and general contractor specializing in the return of compromised commercial property to its pre-loss condition.

4. Pursuant to the Preliminary Injunction and Order Appointing a Permanent Receiver filed on August 18, 2009, in *Securities and Exchange Commission v. Medical Capital Holdings, Inc, et al.*, Case No, SACV 09-818 DOC (RNBx) (the "PI Order"), Seaman is the permanent receiver for Medical Capital Holdings, Inc., Medical Capital Corporation, Medical Provider Funding Corporation IV, and their subsidiaries and affiliates, including Medical Provider Financial Corporation III.

5. On information and belief, Seaman is a resident of Irvine, California.

6. Does 1-10 are parties who are liable to Interstate for the violations

2933890.2

2

COMPLAINT

described below. The true names and capacities of these defendants and the scope of their liability to Interstate are currently unknown to Interstate. Interstate will seek to amend this Complaint when it knows the identities of the Doe defendants and their liability.

## GENERAL ALLEGATIONS

7. On or about November 10, 2006, Medical Provider Financial Corporation III ("MPFC") extended a loan and line of credit to Trace Life Sciences, Inc. ("Trace").

8. As collateral for the loan and line of credit, Trace executed a Deed of Trust and Security Agreement (the "Deed of Trust") in favor of MPFC covering real and personal property owned by Trace in Denton County, Texas (the "Texas Property").

9. On information and belief, Trace defaulted on its loan agreements with MPFC, and MPFC assumed control of the Texas Property.

10. Pursuant to the PI Order, the Honorable David O. Carter for the United States District Court for the Central District of California, Southern Division placed MPFC in receivership and appointed Seaman as permanent receiver. ("Receiver" shall hereinafter refer to Seaman in his capacity as receiver, along with his employees and agents.)

11. On information and belief, as part of its duties to operate the business of the receivership, the Receiver assumed control of the Texas Property and hired Paul Crowe ("Crowe") to manage Trace's operations during the receivership.

12. On information and belief, Crowe is the founder, Chairman, and CEO of NuView Molecular Pharmaceuticals, Inc. and NuView Life Sciences, Inc. (collectively, "NuView").

13. On or about February 3, 2011, the Texas Property suffered severe freeze damage during a storm.

14. Shortly thereafter, Interstate was contacted regarding emergency

2933890.2

3

COMPLAINT

demolition and repairs as well as restoration of the Texas Property. Interstate communicated directly with the Receiver and his staff, Crowe, and insurance carriers regarding the scope and terms of work.

15. On or about February 22, 2011, Interstate, the Receiver, and Crowe executed an Advanced Work Order regarding emergency demolition and repairs (the "Emergency Work"), pursuant to which Interstate commenced work at the Texas Property. Interstate later completed the Emergency Work, for which it was compensated by the Receiver.

16. While Interstate was in the process of completing the Emergency Work, it communicated and negotiated with the Receiver concerning the work necessary to complete the restoration of the Texas Property (the "Restoration Work"). Such communications were with Seaman, as well as members of his staff, including Seth Timmons and Susan Vavak. The Receiver was responsible for approving Interstate's proposed scope of work and terms for the Restoration Work, and for dealing with insurance carriers and adjusters related to policies for the Texas Property, including with regard to Interstate.

17. In late March 2011, Interstate issued an AIA Document A107 Standard Form of Agreement Between Owner and Contractor (the "Restoration Contract") to Trace and the Receiver for the Restoration Work.

18. In or around late April 2011, Interstate inquired about the status of the Restoration Contract and payment of insurance funds for the Restoration Work. Seaman stated that the Receiver was in possession of approximately $900,000 in insurance funds that would be used to pay for the Restoration Work. Seaman also told Interstate that MPFC was planning to sell the Trace assets, including the Texas Property, to NuView, and that he would transfer the insurance funds to NuView in conjunction with that sale. Seaman said that NuView, therefore, would actually make payment of the insurance funds to Interstate. Seaman further explained that the Receiver would not execute the Restoration Contract and that NuView would do

so, since NuView would pay the transferred insurance proceeds to Interstate for the Restoration Work.

19. Interstate subsequently commenced the Restoration Work in direct reliance on Seaman's representations that the Receiver had insurance proceeds in its possession, that the Receiver would transfer those proceeds to NuView, and that NuView would use those proceeds to pay Interstate for the Restoration Work.

20. Through late May 2011, Interstate repeatedly asked the Receiver about payment of the insurance proceeds for the Restoration Work. On May 27, 2011, the Receiver wrote in an email to Interstate that the Receiver had transferred its interests in Trace to NuView and had no remaining interests in Trace or the Texas Property. The Receiver further stated in that email that "all insurance funds have been transferred to NuView," and that Interstate should contact Crowe regarding the insurance claim.

21. In reliance on Seaman's and the Receiver's representations, on May 27, 2011, Interstate entered into a written agreement with Trace and NuView to complete the Restoration Work.

22. On September 27, 2011, Interstate completed the Restoration Work on the Texas Property, the total cost of which was $2,715,331.84. At this time, NuView had not paid to Interstate the approximately $900,000 Interstate believed had been transferred to NuView by the Receiver. Interstate repeatedly sought information from Crowe about these funds, and Crowe suggested myriad excuses about why NuView could not presently pay the amounts owed to Interstate.

23. In or around November 2011, counsel for Crowe sent Interstate a copy of a Final Settlement Statement dated May 3, 2011, for sale of the Texas Property from the Receiver to NuView. The Final Settlement Statement revealed for the first time that the Receiver never transferred the insurance proceeds to NuView as Seaman and the Receiver had represented. Instead, the Receiver had retained the proceeds within the receivership estate as a credit to the purchaser. In other words,

contrary to the Receiver's representations that it would, and eventually did, transfer to NuView the insurance proceeds that would pay for Interstate's work, the Receiver actually permitted NuView to utilize the funds to purchase the Deed of Trust from MPFC. Accordingly, the Receiver retained approximately $900,000 within the receivership estate. Interstate was unaware of these facts prior to receiving the Final Settlement Statement in or around November 2011.

24. As of the date of this filing, Interstate has not been compensated for at least $900,000 of its Restoration Work on the Texas Property.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract Against Seaman as Receiver for MPFC)

25. Interstate hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 24, inclusive, as though fully set forth herein.

26. In late April 2011, the Receiver and Interstate entered into an oral contract for Restoration Work on the Texas Property. Pursuant to that agreement, the Receiver agreed to hold approximately $900,000 in insurance proceeds in its possession for restoration of the Texas Property, and transfer those proceeds to NuView in connection with the sale of the Trace assets to compensate Interstate for the Restoration Work. In return, Interstate agreed to complete the Restoration Work.

27. Interstate completed the Restoration Work on September 27, 2011.

28. The Receiver breached the agreement by failing to transfer the insurance proceeds to NuView, and instead retaining those proceeds within the receivership estate as a credit to the purchaser to fund the sale of the Deed of Trust from MPFC.

29. Interstate was damaged by the Receiver's breach, as it has still not been paid at least $900,000 of the total cost to complete the Restoration Work.

## SECOND CLAIM FOR RELIEF

**(Promissory Estoppel Against Seaman as Receiver for MPFC and Does 1-10)**

30. Interstate hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 29, inclusive, as though fully set forth herein.

31. In or around late April 2011, the Receiver promised Interstate that it had approximately $900,000 in insurance proceeds in its possession for restoration of the Texas Property, and that the Receiver would transfer those proceeds to NuView in connection with the receivership's sale of the Trace assets to compensate Interstate for the Restoration Work.

32. Consistent with its April 2011 representations, on May 27, 2011, the Receiver wrote in an email to Interstate that it had transferred its interests in Trace to NuView and that "all insurance funds have been transferred to NuView."

33. In reliance on the Receivers promises to reserve the insurance proceeds for the Restoration Work and to transfer them to NuView for payment to Interstate, Interstate commenced the Restoration Work, entered into a written agreement with Trace and NuView to complete the Restoration Work, and, on September 27, 2011, completed the Restoration Work at a total cost of $2,715,331.84.

34. Interstate's reliance was both reasonable and foreseeable based upon, *inter alia*: (1) the course of dealing between the Receiver and Interstate in regard to the Emergency Work; (2) the fact that the Receiver communicated and negotiated with Interstate regarding the Restoration Work; (3) the Receiver's responsibility for approving Interstate's proposed scope of work and the terms for the Restoration Work; and (4) the Receiver's role in dealing with insurance carriers and adjusters related to policies for the Texas Property.

35. The Receiver breached its promise to Interstate by failing to transfer the insurance proceeds to NuView, and instead retaining the proceeds within the receivership estate as a credit to the purchaser to fund the sale of the Deed of Trust from MPFC.

36. Interstate was injured by its reliance on the Receiver's promise, as it has still not been paid at least $900,000 of the total cost to complete the Restoration Work.

## THIRD CLAIM FOR RELIEF

### (Intentional Misrepresentation Against Seaman individually and as Receiver for MPFC, and Does 1-10)

37. Interstate hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 36, inclusive, as though fully set forth herein.

38. In or around late April 2011, Seaman represented to Interstate that the receivership had approximately $900,000 in insurance proceeds in its possession for restoration of the Texas Property, and that it would transfer those proceeds to NuView in connection with the receivership's sale of the Trace assets to compensate Interstate for the Restoration Work.

39. Consistent with those April 2011 representations, on May 27, 2011, the Receiver wrote in an email to Interstate that it had transferred its interests in Trace to NuView and that "all insurance funds have been transferred to NuView."

40. Seaman's April 2011 representations were false. Instead of transferring the insurance proceeds to NuView as part of the sale of the Trace assets, the receivership estate retained the proceeds as a credit to the purchaser to fund the sale of the Deed of Trust from MPFC.

41. Seaman knew the representations were false at the time they were made, or made the representations recklessly without regard for their truth.

42. The Receiver's May 27, 2011, representation that the insurance proceeds had been transferred to NuView was false.

43. The Receiver knew that the representation was false at the time it was made. The Final Settlement Statement for sale of the Texas Property from the Receiver to NuView dated May 3, 2011—more than *three weeks before* the May 27, 2011, email— reflects that the receivership estate retained the proceeds as a credit to

the purchaser to fund the sale of the Deed of Trust from MPFC.

44. Seaman and the Receiver intended that Interstate would rely on the representations regarding payment to commence and complete the Restoration Work.

45. In reliance on the representations that Seaman would reserve the insurance proceeds for the Restoration Work and transfer them to NuView for payment to Interstate, and that the insurance proceeds had been transferred as part of the sale of the Texas Property, Interstate commenced the Restoration Work, entered into a written agreement with Trace and NuView to complete the Restoration Work, and, on September 27, 2011, completed the Restoration Work at a total cost of $2,715,331.84.

46. Interstate's reliance was reasonable based upon, *inter alia*: (1) the course of dealing between the Receiver and Interstate in regard to the Emergency Work; (2) the fact that the Receiver communicated and negotiated with Interstate regarding the Restoration Work; (3) the Receiver's responsibility for approving Interstate's proposed scope of work and the terms for the Restoration Work; and (4) the Receiver's role in dealing with insurance carriers and adjusters related to policies for the Texas Property.

47. Interstate was injured by its reliance on the representations, as it has still not been paid at least $900,000 of the total cost to complete the Restoration Work.

### FOURTH CLAIM FOR RELIEF
### (False Promise Against Seaman individually and as Receiver for MPFC, and Does 1-10)

48. Interstate hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 47, inclusive, as though fully set forth herein.

49. In or around late April 2011, Seaman promised Interstate that the receivership had approximately $900,000 in insurance proceeds in its possession for

restoration of the Texas Property, and that it would transfer those proceeds to NuView in connection with the receivership's sale of the Trace assets to compensate Interstate for the Restoration Work.

50. On May 27, 2011, the Receiver wrote in an email to Interstate that it had transferred its interests in Trace to NuView and that "all insurance funds have been transferred to NuView."

51. Seaman and the Receiver intended that Interstate would rely on the promises regarding payment to commence and complete the Restoration Work.

52. In reliance on those promises, Interstate commenced the Restoration Work, entered into a written agreement with Trace and NuView to complete the Restoration Work, and, on September 27, 2011, completed the Restoration Work at a total cost of $2,715,331.84.

53. Seaman and the Receiver did not intend to perform the promises at the time they were made. Instead of transferring the insurance proceeds to NuView as part of the sale of the Trace assets, the receivership estate retained the proceeds as a credit to the purchaser to fund the sale of the Deed of Trust from MPFC.

54. Interstate was injured by its reliance on the representations, as it has still not been paid at least $900,000 of the total cost to complete the Restoration Work.

## FIFTH CLAIM FOR RELIEF

**(Negligent Misrepresentation Against Seaman as Receiver for MPFC and Does 1-10)**

55. Interstate hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 54, inclusive, as though fully set forth herein.

56. In or around late April 2011, Seaman represented to Interstate that the receivership had approximately $900,000 in insurance proceeds in its possession for restoration of the Texas Property, and that it would transfer those proceeds to NuView in connection with the receivership's sale of the Trace assets to compensate

Interstate for the Restoration Work.

57. The Receiver confirmed that representation on May 27, 2011, in an email to Interstate stating that it had transferred its interests in Trace to NuView and that "all insurance funds have been transferred to NuView."

58. The Receiver made the May 27, 2011, representation without reasonable grounds for believing it was true, and intended to deceive Interstate by stating that it had transferred the insurance proceeds to NuView. The Final Settlement Statement for the sale of the Texas Property from the Receiver to NuView dated May 3, 2011—more than *three weeks before* the May 27, 2011, email— reflects that the receivership estate had retained the insurance proceeds as a credit to the purchaser to fund the sale of the Deed of Trust from MPFC.

59. In reliance on the representation that the insurance proceeds had been transferred as part of the sale of the Texas Property, Interstate entered into a written agreement with Trace and NuView to complete the Restoration Work, and, on September 27, 2011, completed the Restoration Work at a total cost of $2,715,331.84.

60. Interstate's reliance was reasonable based upon, *inter alia*: (1) the course of dealing between the Receiver and Interstate in regard to the Emergency Work; (2) the fact that the Receiver communicated and negotiated with Interstate regarding the Restoration Work; (3) the Receiver's responsibility for approving Interstate's proposed scope of work and the terms for the Restoration Work; and (4) the Receiver's role in dealing with insurance carriers and adjusters related to policies for the Texas Property.

61. Interstate was injured by its reliance on the representations, as it has still not been paid at least $900,000 of the total cost to complete the Restoration Work.

## SIXTH CLAIM FOR RELIEF

### (Restitution—Unjust Enrichment Against Seaman as Receiver for MPFC and Does 1-10)

62. Interstate hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 61, inclusive, as though fully set forth herein.

63. The Receiver obtained approximately $900,000 of insurance proceeds to complete repair and restoration work on the Texas Property.

64. The Receiver represented to Interstate that it would transfer those proceeds to NuView in connection with the receivership's sale of the Trace assets to compensate Interstate for the Restoration Work.

65. On May 27, 2011, The Receiver confirmed by email to Interstate that "all insurance funds have been transferred to NuView."

66. In reliance on those representations, Interstate commenced the Restoration Work, entered into a written agreement with Trace and NuView to complete the Restoration Work, and, on September 27, 2011, completed the Restoration Work at a total cost of $2,715,331.84.

67. Instead of transferring the insurance proceeds to NuView as part of the sale of the Trace assets, the receivership estate retained the proceeds as a credit to the purchaser to fund the sale of the Deed of Trust from MPFC.

68. The Receiver has been unjustly enriched by retention of the insurance proceeds.

69. Interstate has still not been paid at least $900,000 of the total cost to complete the Restoration Work.

## SEVENTH CLAIM FOR RELIEF

### (Constructive Trust Against Seaman as Receiver for MPFC and Does 1-10)

70. Interstate hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 69, inclusive, as though fully set forth herein.

71. The Receiver obtained approximately $900,000 of insurance proceeds

to complete repair and restoration work on the Texas Property.

72. The Receiver represented to Interstate that it would transfer those proceeds to NuView in connection with the receivership's sale of the Trace assets to compensate Interstate for the Restoration Work.

73. On May 27, 2011, The Receiver confirmed by email to Interstate that "all insurance funds have been transferred to NuView."

74. In reliance on those representations, Interstate commenced the Restoration Work, entered into a written agreement with Trace and NuView to complete the Restoration Work, and, on September 27, 2011, completed the Restoration Work at a total cost of $2,715,331.84.

75. Instead of transferring the insurance proceeds to NuView as part of the sale of the Trace assets, the receivership estate retained the proceeds as a credit to the purchaser to fund the sale of the Deed of Trust from MPFC.

76. Interstate is entitled to the full amount of insurance proceeds wrongfully retained by the Receiver.

//
//
//

## PRAYER FOR RELIEF

Wherefore, Interstate prays for judgment as follows:

    A.    For an award to Interstate of compensatory damages;

    B.    For an award to Interstate of pre-judgment and post-judgment interest;

    C.    For an award to Interstate of punitive and exemplary damages;

    D.    For an award to Interstate of its costs and expenses incurred in this action; and

    E.    For any and all other relief this Court deems just and proper.

DATED: May 2, 2013        Respectfully submitted,

Mitchell A. Kamin
Nicole R. Van Dyk
BIRD, MARELLA, BOXER, WOLPERT,
    NESSIM, DROOKS & LINCENBERG, P.C.

By: _____
        Mitchell A. Kamin
Attorneys for Plaintiff Interstate Restoration, LLC

# DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38 and Local Rule 38-1, Plaintiff Interstate Restoration, LLC hereby demands a jury trial of all issues in the above-captioned action that are triable to a jury.

DATED: May 2, 2013

Respectfully submitted,

Mitchell A. Kamin
Nicole R. Van Dyk
BIRD, MARELLA, BOXER, WOLPERT,
 NESSIM, DROOKS & LINCENBERG, P.C.

By: _____
Mitchell A. Kamin
Attorneys for Plaintiff Interstate Restoration, LLC

2933890.2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Robert N. Block.

The case number on all documents filed with the Court should read as follows:

### SACV13- 706 AG (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[X] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY