DAVID R. ZARO (BAR NO. 124334)
MICHAEL R. FARRELL (BAR NO. 173831)
TED FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone:  (213) 622-5555
Fax:  (213) 620-8816
E-Mail:  dzaro@allenmatkins.com
         mfarrell@allenmatkins.com
         tfates@allenmatkins.com

Attorneys for Receiver
Thomas A. Seaman

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| INTERSTATE RESTORATION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS A. SEAMAN, individually and as receiver for Medical Provider Financial Corporation III, and DOES 1-10,<br><br>Defendants. | Case No. 8:13-cv-00706-DOC (RNBx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION TO STRIKE REQUEST FOR PUNITIVE DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     December 16, 2013<br>Time:     8:30 a.m.<br>Ctrm:    9D<br>Judge:   Hon. David O. Carter<br><br>Complaint Filed:   May 2, 2013 |

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on December 16, 2013, at 8:30 a.m., in Courtroom 9D of the above-entitled Court located at 411 West Fourth Street, Santa Ana, California 92701, Thomas A. Seaman ("Receiver"), as the court-appointed receiver for Medical Capital Holdings, Inc., Medical Capital Corporation, and Medical Provider Funding Corporation VI, including Medical Provider Financial Corporation III, and their subsidiaries and affiliates, will move for an order dismissing the First Amended Complaint ("FAC") filed by Interstate Restoration, LLC ("Interstate") and striking Interstate's claim for punitive damages.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground the FAC fails to state a claim upon which relief can be granted. This Motion is also made pursuant to Federal Rule of Civil Procedure 12(f) on the ground Interstate has failed to allege, and cannot allege, any facts to support its request for punitive damages. The Motion is based on this Notice and Motion, the Memorandum of Points and Authorities below and the Request for Judicial Notice filed concurrently herewith.

**Procedural Requirements**: If you oppose this Motion, you are required to file your written opposition with the Office of the Clerk, United States District Court, 411 West Fourth Street, Santa Ana, California 92701 and serve the same on the undersigned not later than twenty-one (21) calendar days prior to the hearing. IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice.

This Motion is made following a conference of counsel pursuant to L.R. 7-3 which took place on November 7, 2013.

Dated:  November 8, 2013

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By:      */s/ Ted Fates*

TED FATES
Attorneys for Receiver
Thomas A. Seaman

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

811513.03/SD

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................2

    A.    Appointment of the Receiver ....................................................2

    B.    The Emergency Demolition and Repair Work ..................................2

    C.    The Court's Approval of the Sale of Trace's Assets to NuView ................................................................................3

    D.    Interstate's Contract with NuView and NuView's Failure to Pay Interstate ................................................................3

III.  ARGUMENT ..................................................................................5

    A.    Standard of Review ..................................................................5

    B.    Interstate's Breach of Oral Contract Fails ......................................7

        1.    Interstate Has Not Plead Facts Demonstrating Mutual Assent ......................................................7

        2.    Interstate Has Not Pled Facts Demonstrating Consideration ......................................................10

        3.    Interstate Has Not Pled Facts Demonstrating the Receiver Caused its Purported Harm........................10

    C.    Interstate's Promissory Estoppel Claim Fails ...................................11

        1.    Interstate Fails to Allege Facts Showing its Reliance was Reasonable or Foreseeable ...............................11

        2.    The FAC Fails to Plead Causation ...........................14

    D.    Interstate's Intentional Misrepresentation and False Promise Claims Fail ..............................................................15

    E.    Interstate's Negligent Misrepresentation Claim Fails ........................16

    F.    Interstate's Unjust Enrichment and Constructive Trust Claims Fail ................................................................17

IV.   THE COURT SHOULD GRANT THE RECEIVER'S MOTION TO STRIKE PUNITIVE DAMAGES ......................................................18

V.    LEAVE TO AMEND SHOULD BE DENIED ...........................................19

VI.   CONCLUSION ................................................................................20

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Cases</u>

*Alcarez v. Wachovia Mortgage FSB*
2009 U.S. Dist. LEXIS 34009 (E.D. Cal. Jan. 21, 2009).................................18

*Ashcroft v. Iqbal*
129 S. Ct. 1937 (2009) ...................................................6

*Beck v. State Farm Mut. Auto. Ins. Co.*
54 Cal.App.3d 347 (1976)..................................................18

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ...................................................6

*Boles v. Mercorp, Inc.*
2008 U.S. Dist. LEXIS 115688 (C.D. Cal. Dec. 12, 2009) .........................19

*Cal. ex. rel. State Lands Comm'n v. United States*
512 F.Supp. 36 (N.D. Cal. 1981) .........................................7

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*
590 F.3d 806 (9th Cir. 2010).............................................6

*Durning v. First Boston Corp.*
815 F.2d 1265 (9th Cir. 1987).............................................6

*Fantasy, Inc. v. Fogerty*
984 F.2d 1524 (9th Cir. 1993)............................................6

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*
868 F.Supp.2d 983 (E.D. Cal. 2012).......................................9

*Fox v. Pollack*
181 Cal.App.3d 953 (1986)..............................................16

*Freidman v. Merck & Co.*
107 Cal. App. 4th 454 (2003).............................................17

*Gray v. JPMorgan Chase Bank*
2012 U.S. Dist. LEXIS 54549 (C.D. Cal. April 18, 2012) .........................8

*Harbridge v. Schwarzenegger*
2011 U.S. Dist. LEXIS 150789 (C.D. Cal. Aug. 31, 2011)..........................8

*IMACC Corp. v. Nat'l Union Fire & Ins. Co. of Pittsburg*
1998 U.S. Dist. LEXIS 17620 (N.D. Cal. Oct. 5, 1998)............................17

*LeDuc v. Kentucky Cent. Life Ins. Co.*
814 F.Supp. 820 (N.D. Cal. 1992) .........................................6

*Lunsford v. Am. Guar. & Liab. Co.*

**Page(s)**

18 F.3d 653 (9th Cir. 1994)...................................................................... 18

*Mbaba v. IndyMac Fed. Bank F.S.B.*
2010 U.S. Dist. LEXIS 6353 (E.D. Cal. Jan. 27, 2010)................................ 7

*Platt Anchor Bolt, Inc. v. IHI, Inc.,*
352 F.Supp.2d 1048 (N.D. Cal. 2004) ...................................................... 6

*PowerAgent Inc. v. Elec. Data Sys. Corp.*
358 F.3d 1187 (9th Cir. 2004).................................................................. 8

*Ramirez-Salazar v. Derksen*
2012 U.S. Dist. LEXIS 75828 (E.D. Cal. May 30, 2012).............................. 8

*Robertson v. Dean Witter Reynolds, Inc.*
749 F.2d 530 (9th Cir. 1984)..................................................................... 5

*Tarmann v. State Farm Mut. Auto. Ins. Co.*
2 Cal.App.4th 153 (1991)........................................................................ 16

*Townsend v. Univ. of Alaska*
543 F.3d 478 (9th Cir. 2008).................................................................... 19

*Wilkerson v. Bulter*
229 F.R.D. 116 (E.D. Cal. 2005).............................................................. 7

**Treatise**

Res. 2d Torts § 522 ................................................................................ 17

**Other Authorities**

California Civil Code section 3294 ..................................................... 18, 19

Federal Rule of Civil Procedure 12 ........................................................ 5, 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Through its First Amended Complaint ("FAC"), plaintiff Interstate Restoration, LLC ("Interstate") continues to claim the Receiver is somehow responsible for losses it allegedly suffered after Interstate commenced a $2.7 million restoration project with no contract in place and while the loan secured by the property was in the process of being sold from the Receiver to NuView.  Interstate attempts to address the numerous fundamental flaws in its original complaint with a handful of inconsequential new allegations it claims establish reasonable reliance and causation.

To the contrary, Interstate's new allegations only confirm the Court's ruling that no oral contract existed and any reliance by Interstate on statements purportedly made by the Receiver absent a signed, written agreement was unreasonable.  Despite being repeatedly told by the Receiver and NuView that the Receiver was selling the Trace Life Sciences, Inc. ("Trace") loan to NuView, that the Receiver would not be a party to the restoration contract, that NuView would ultimately pay Interstate, and that Interstate should hold off on any work until the close of the loan sale transaction, Interstate unilaterally chose to begin "preparatory work" for the restoration project anyway.  Interstate took a risk that proved to be ill-advised and now seeks to have the receivership estate pay for its poor choice and NuView's breach of the restoration contract.  The Court should not hesitate to dismiss the FAC and do so with prejudice as the fundamental flaws in Interstate's claims cannot be cured by amendment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   Appointment of the Receiver

On November 10, 2006, MPFC III issued a loan and a line of credit ("Loan") to Trace.  (FAC ¶ 6.)  The Loan was memorialized by a promissory note and secured by a deed of trust recorded against real property owned by Trace and located in Denton, Texas ("Property").  (*Id.* at ¶ 7; Dkt. No. 23 at ¶ 8.)  Eventually, Trace defaulted on its loan payments and, as a result, MPFC III exercised certain proxy rights regarding Trace's stock and caused Trace to engage NuView to replace Trace's prior management and manage the Property.  (Dkt. No. 23 at ¶¶ 9, 11.)

On August 18, 2009, this Court issued a preliminary injunction and order appointing the Receiver as the permanent receiver of MPFC III and other entities. (FAC ¶ 9; *see also* Request for Judicial Notice ("RJN"), Ex. A.)

### B.   The Emergency Demolition and Repair Work

On or about February 3, 2011, the Property suffered severe flood damage. (FAC ¶ 12.)  The Receiver, in his capacity as receiver for MPFC III, was the lender and loss payee under the insurance policy covering the Property.  Trace hired Interstate to perform demolition work at the Property as a result of the flood damage.  (FAC ¶ 13.)  On or about February 22, 2011, Interstate and Trace entered into a written contract regarding Phase 1 of the emergency demolition work. (FAC ¶ 17; Dkt. No. 23 at ¶ 15.)  Interstate subsequently completed Phase 1 of the emergency demolition work.  (FAC ¶ 20.)  On or about March 2, 2011, Interstate and Trace entered into a written contract for Phase 2 of the emergency demolition work, which was thereafter commenced and completed.  (FAC ¶ 23.)  Trace also received a proposal for restoration work from Interstate.  (FAC ¶¶ 26, 28.)  Interstate was fully compensated for all demolition work from the insurance proceeds the insurer paid to the Receiver.  (FAC ¶¶ 21, 24.)

## C.   The Court's Approval of the Sale of Trace's Assets to NuView

On or around March 31, 2011, the Receiver, in his capacity as receiver for MPFC III, and NuView entered into a purchase and sale agreement for the sale of the Loan to Trace ("Loan Sale Contract").  (RJN, Ex. B.)  With regard to insurance proceeds received by the Receiver, the Loan Sale Contract authorized the Receiver to use the insurance proceeds to repair property owned by Trace or as a credit towards the purchase price.  (RJN, Ex. B, § 8.16.)  Specifically, the Loan Sale Contract provided,

> Insurance Proceeds: To the extent that Seller receives any insurance proceeds for the repair/restoration of the property owned by Trace, and including the $134,720 received by the Seller with respect to the theft of certain equipment, Seller shall either, in its sole discretion, (i) use the proceeds towards the repair/restoration of such property, or (ii) credit the amount of such insurance proceeds against the Purchase Price and assign any rights to additional insurance proceeds based upon the repair/restoration of the property to the Purchaser.

(RJN, Ex. B, § 8.16.)

On April 1, 2011, the Receiver moved for court approval of the Loan Sale Contract.  On April 26, 2011, the Court approved the Loan Sale Contract.  (*See* RJN, Ex. C.)  The sale closed on May 17, 2011, before Interstate, NuView, and Trace entered into their contract for restoration work.

## D.   Interstate's Contract with NuView and NuView's Failure to Pay Interstate

While it was performing emergency demolition work at the Property, Interstate communicated with the Receiver and NuView's CEO, Paul Crowe ("Crowe"), regarding the possibility of Interstate completing the full restoration of the Property.  (FAC ¶¶ 26-28.)  Interstate alleges in late March 2011, it sent Trace and the Receiver a written contract for the completion of the restoration work. (FAC ¶ 28.)

Interstate alleges on or about April 6, 2011, it was informed by NuView that the Receiver would not be a party to the contract for the restoration work.

(FAC ¶ 29.)  The fact the Receiver would not be a party to the restoration work contract was reiterated by the Receiver.  (FAC ¶ 30.)  Interstate further alleges in April 2011, it contacted the Receiver to inquire about the status of the restoration work contract.  (FAC ¶ 32.)  Interstate alleges the Receiver informed Interstate that MPFC III was selling the Trace loan to NuView and the insurance proceeds would be transferred to NuView.  (*Id*.)  The Receiver also informed Interstate that Trace and NuView, and not the Receiver, would be executing the contract for the restoration work and Trace and NuView would be responsible for compensating Interstate.  (*Id*.)  Interstate alleges based on these representations it began purchasing equipment and prepping for the restoration work.  (FAC ¶ 33.)

Interstate alleges on or about May 4, it submitted a billing statement to the Receiver seeking a down payment for the restoration work.  (FAC ¶ 34.)  The Receiver responded by informing Interstate that a signed contract between Interstate and NuView was necessary before making any payment to Interstate.  (*Id*.)  That same day, Crowe sent an email to both Interstate and the Receiver requesting a "time-out" until the sale of the Trace loan was completed.  (FAC ¶ 35.)  Despite Crowe's request for a time-out, Interstate alleges it contacted Crowe to clarify it should still move forward with the preliminary aspects of the restoration work while the formalities of the Trace sale were completed.  (FAC ¶ 36.)  Interstate does not allege the Receiver was a party to this conversation or was ever made aware that it continued the preparation work after Crowe's time-out request.  (*Id*.)

Due to unforeseen circumstances, NuView was unable to pay the entire purchase price under the Loan Sale Contract on the sale closing date (May 17, 2011).  Pursuant to its authority under the Loan Sale Contract and Court order approving the Loan Sale Contract, the Receiver gave NuView a credit towards the purchase price in the amount of the insurance proceeds.  (FAC ¶ 39.)

Interstate alleges on May 27, 2011, despite already being told by the Receiver and Crowe that Trace and NuView would be responsible for paying Interstate, it

1   contacted the Receiver regarding the down payment for the restoration work.

2   (FAC ¶ 37.)  Interstate alleges the Receiver informed it that the insurance proceeds

3   had been transferred to NuView.  (*Id*.)  Interstate alleges it entered into a written

4   contract with Trace and NuView for the restoration work the same day.  (FAC ¶ 38.)

5       Interstate alleges it completed the restoration work in September 2011, but

6   was not paid by Trace or NuView.  (FAC ¶ 41.)  When Interstate confronted Crowe

7   regarding payment, Crowe acknowledged the insurance proceeds were no longer

8   available, but assured Interstate it would be paid.  (*See* RJN, Ex. D, ¶ 13.)  Interstate

9   agreed to allow NuView additional time to make payment, but required NuView to

10  provide collateral to secure its payment obligations.  (*See id*., ¶ 17.)  In response,

11  NuView executed a promissory note in favor of Interstate in the amount of

12  $1,246,00.88 due on June 15, 2012.  (*See id*.)  However, NuView failed to make its

13  payment by June 15, 2012.  (*See id*., ¶ 21.)

14      Realizing Trace and NuView are unlikely to pay, Interstate filed this meritless

15  lawsuit against the Receiver.  On October 9, 2013, the Court granted the Receiver's

16  motion to dismiss with leave to amend.  Interstate filed the FAC on October 22,

17  2013.

18                              **III.**

19                          **ARGUMENT**

20      **A.**   **Standard of Review**

21      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be

22  granted where a plaintiff fails to state a claim upon which relief can be granted.

23  Fed. R. Civ. P. 12(b)(6).  "A complaint may be dismissed as a matter of law for one

24  of two reasons:  (1) lack of a cognizable legal theory or (2) insufficient facts under a

25  cognizable legal claim."  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530,

26  534 (9th Cir. 1984).

27      In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept as

28  true the factual allegations of the complaint, but a court need not accept as true

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

811513.03/SD

unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast as factual allegations.  *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a Claim for Relief will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Further, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570) (citation omitted).  For the purposes of evaluating a motion to dismiss, the court may disregard allegations that contradict facts set forth in exhibits to the complaint or matters properly subject to judicial notice.  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

A motion to strike is properly granted to strike "redundant, immaterial, impertinent or scandalous" matter from the complaint.  Fed. R. Civ. P. 12(f).  Immaterial matter is that which has "no essential or important relationship to the claim for relief or the defenses being pleaded."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotations and citation omitted), rev'd on other grounds, 510 U.S. 517 (1994).  Impertinent matter is matter that is "irrelevant to the issues in the case and or are otherwise inadmissible."  *Id.* at 1527 (defining impertinent matter as that which does not pertain or is not necessary to the issues in question).  And, matter that has no possible bearing on the subject matter of the litigation or that is unduly prejudicial to the moving party can also be stricken.  *Platt Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004); *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992).

A motion to strike may be used to remove "requested relief, such as punitive damages, which is not recoverable as a matter of law."  *Wilkerson v. Bulter*,

1   229 F.R.D. 116, 172 (E.D. Cal. 2005); *Mbaba v. IndyMac Fed. Bank F.S.B.*,

2   2010 U.S. Dist. LEXIS 6353, *29 (E.D. Cal. Jan. 27, 2010) ("[A] motion to strike

3   may be used to strike any part of the prayer for relief when the damages sought are

4   not recoverable as a matter of law.").  "[W]here a motion may have the effect of

5   making the trial of the action less complicated, or have the effect of otherwise

6   streamlining the ultimate resolution of the action, the motion to strike will be well

7   taken." *Cal. ex. rel. State Lands Comm'n v. United States*, 512 F.Supp. 36, 38

8   (N.D. Cal. 1981).

9       **B.**    <u>**Interstate's Breach of Oral Contract Fails**</u>

10       Through its first claim for relief, Interstate continues to allege the Receiver

11   breached an oral contract by failing to transfer the insurance proceeds to NuView.

12   (FAC ¶ 43.)  Like its predecessor in Interstate's original complaint, this claim fails

13   because Interstate has not plead facts demonstrating "the Receiver ever actually

14   *agreed* that he would send the insurance proceeds to NuView *in exchange for* the

15   Restoration Work[.]"  (Order at p. 8 [emphasis is original].)

16       *1.*    <u>*Interstate Has Not Plead Facts Demonstrating Mutual Assent*</u>

17       Interstate attempts to overcome the defects in its prior complaint, by alleging

18   new contradictory facts regarding statements by the Receiver and the parties' prior

19   course of conduct.  (FAC ¶ 45.)  The FAC, however, makes clear there was no

20   assent on the part of the Receiver to enter into any contract, oral or otherwise, with

21   Interstate for the completion of the restoration work.  Interstate concedes that every

22   time it approached the Receiver regarding the restoration work, the Receiver

23   reiterated he would not be a party to contract.  (FAC ¶¶ 30, 32, 34.)  In fact, when

24   Interstate sent the Receiver the written contract for the restoration work, the

25   Receiver responded by informing Interstate that MPFC III was in the process of

26   selling the Trace loan to NuView, that NuView, not the Receiver, would

27   acknowledge the formal written agreement as loss payee, and that NuView would

28   ultimately pay Interstate for the restoration work.  (FAC ¶ 32.)  Interstate's attempt

1  to convert the Receiver's rejection into a purported offer to enter into a different
2  contract with Interstate is nonsensical. As Interstate admits, the Receiver told
3  Interstate to contract with NuView.

4      In addition, as the Court noted in granting the prior Motion to Dismiss,
5  Interstate failed to allege facts showing the Receiver ever asked or instructed
6  Interstate to proceed with the restoration work, and failed to allege the Receiver
7  agreed to send the insurance proceeds to NuView *in exchange for* the restoration
8  work. These defects have not been addressed by Interstate in the amended pleading.

9      To the extent Interstate contends the parties' prior course of conduct allowed
10  for mutual assent without a written contract, this claim fails for several reasons.
11  First, the Court should disregard Interstate's allegations regarding commencing work
12  on Phase 1 of the emergency demolition work pursuant to a verbal agreement as this
13  allegation directly contradicts Interstate's allegations in its original complaint that it
14  commenced the demolition work after execution of an advance work order.
15  (Dkt. No. 23 at ¶ 15 ["On or about February 22, 2011, Interstate, the Receiver, and
16  Crowe executed an Advance Work Order regarding the emergency demolition and
17  repairs (the 'Emergency Work'), pursuant to which Interstate commenced work at
18  the Texas Property."]; *see also PowerAgent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d
19  1187, 1192-93 (9th Cir. 2004); *Harbridge v. Schwarzenegger*, 2011 U.S. Dist.
20  LEXIS 150789, *4 n.3 (C.D. Cal. Aug. 31, 2011) (finding that the court need not
21  accept as true allegations that contradict those alleged in prior pleadings); *Gray v.*
22  *JPMorgan Chase Bank*, 2012 U.S. Dist. LEXIS 54549, *4 (C.D. Cal. April 18,
23  2012) ("Plaintiff's allegation regarding the lack of lowered counters, however,
24  directly contradicts the allegations of the original complaint. The allegations of the
25  original complaint serve as a judicial admission that the bank did have lowered
26  counters for wheelchair users."); *Ramirez-Salazar v. Derksen*, 2012 U.S. Dist.
27  LEXIS 75828, *4-5 (E.D. Cal. May 30, 2012) ("Where allegations in an amended
28  complaint contradict those in a prior complaint, a district court need not accept the

1    new alleged facts as true, and may, in fact, strike the changed allegations as 'false

2    and sham.'''').)

3         Second, even if its new allegations were considered, Interstate fails to

4    establish a course of conduct applicable to the restoration work.  It fails to allege

5    that the Receiver was a party to the purported "verbal agreement" entered into on

6    February 18, 2011.  (FAC ¶ 16)  In addition, the circumstances regarding emergency

7    demolition work are completely different and cannot be used as a basis to show

8    mutual assent for restoration work.  The emergency demolition work required

9    immediate attention to prevent water damage and mold from spreading on the

10   Property.  This was not the case with the restoration work.  There was no urgency.

11   The parties had time to negotiate terms of the agreement and scope of the work.

12   This is reflected by the Receiver's continuous reiteration that execution of the

13   written agreement between Trace, NuView, and Interstate was required before any

14   down payment could be made.  (FAC ¶ 30.)  This sentiment was echoed by Crowe

15   when he asked for a time-out on the restoration work.  (FAC ¶ 35.)

16        Finally, Interstate has not alleged any facts showing a pattern of mutual assent

17   in the absence of a contract with regard to the second and third phases of the

18   demolition work.  The FAC acknowledges it was not until after Interstate received a

19   signed work order from the Receiver that it commenced work on Phase 2.

20   (FAC ¶ 23.)  The FAC is devoid of any facts regarding the parties' conduct

21   regarding Phase 3 because the facts confirm what the Court has already held; "the

22   parties' course of conduct does not show mutual assent to an agreement for

23   analogous work when the parties had not executed a contract[.]"  (Order at p. 8; *see*

24   *also Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc*., 868 F.Supp.2d 983,

25   996 (E.D. Cal. 2012) (holding that plaintiff had "not identified any other prior

26   conduct that suggest the parties would have intended to enter into a contract based

27   on a single letter" where the prior contract was executed by both parties).

28

2. *Interstate Has Not Pled Facts Demonstrating Consideration*

The FAC further fails to allege any benefit conferred upon the Receiver or any detriment suffered by Interstate in consideration for the Receiver's purported promise.  Interstate's purported consideration for the contract, its completion of the restoration work, did not confer a benefit on the Receiver as the Trace loan was sold to NuView prior to Interstate commencing actual restoration work.  (FAC ¶¶ 38, 72.)  Further, the FAC alleges Interstate entered into a written contract with NuView for the completion of the work.  (*Id.*)

Moreover, Interstate's allegations it conferred benefits upon the Receiver "by making necessary repairs to the property under the receivership's control, increasing the value of the Trace assets that the receivership was trying to sell, and, on information and belief, enabling the Receiver to close the sale of the Trace assets in May of 2011" lack merit.  (FAC ¶ 43.)  First, Interstate was fully compensated for its emergency demolition work on the Property.  Such work was not consideration for the $900,000 it claims to be owed.  (FAC ¶¶ 21, 24.)  Second, Interstate fails to allege facts that it conferred any actual benefit to the Receiver prior to the sale of the Trace loan.  Despite Interstate's claims it "commenced" the restoration work in late April 2011, it admits it only purchased equipment and did initial prep work. (FAC ¶ 33.)  There is no allegation that Interstate performed any work *at the property* between the "late April" discussion with the Receiver and the alleged May 3rd sale date, after which the Receiver had no interest in the property.  Moreover, there are no facts suggesting Interstate's prep work factored into closing the loan sale in any way.  Interstate's work was consideration for its contract with Trace and NuView, not for a separate oral contract with the Receiver.

3. *Interstate Has Not Pled Facts Demonstrating the Receiver Caused its Purported Harm*

Even if Interstate were able to show a contract exists, which it cannot, its claim would still fail because, as discussed further below, any purported harm

1   suffered by Interstate was the result of Trace and NuView's failure to pay Interstate
2   and not any conduct of the Receiver. Accordingly, Interstate fails to state, and
3   cannot state, a claim for breach of oral contract.

4       **C.    Interstate's Promissory Estoppel Claim Fails**

5       Interstate's FAC does nothing to salvage its fundamentally flawed promissory
6   estoppel claim. As with the original complaint, the FAC fails to allege any facts
7   demonstrating (1) Interstate justifiably relied on the Receiver's purported promise;
8   (2) Interstate's purported reliance was foreseeable; and (3) Interstate's alleged injury
9   was the result of such conduct.

10          *1.    Interstate Fails to Allege Facts Showing its Reliance was*
11                 *Reasonable or Foreseeable*

12      In its Order, the Court concluded it was unreasonable and unforeseeable that
13  Interstate would "unilaterally start the Restoration Work" based on the Receiver's
14  April 2011 statements "in light of the unclear nature of the negotiations and the
15  ambiguity of payment." (Order at pp. 10-11.) In response, Interstate offers five
16  reasons why its purported reliance was reasonable and foreseeable. (FAC ¶ 57.)

17      First, Interstate alleges the parties' prior dealings made it reasonable to
18  commence the restoration work without a signed contract. (FAC ¶ 57.) As
19  discussed above, Interstate fails to allege facts supporting this premise. To the
20  contrary, the parties' conduct with regards to the three phases of emergency
21  demolition work establishes that a contract was signed **before** Interstate commenced
22  the demolition work. The FAC alleges it was not until after the Receiver provided
23  Interstate with a signed change order that Interstate began working on Phase 2 of the
24  demolition. (FAC ¶ 23.) Further, even if the parties' prior dealings showed
25  Interstate commenced its work on the emergency demolition phases without a
26  signed contract, this theory would still fail. As explained above, the circumstances
27  regarding the emergency demolition work and the restoration work were
28  fundamentally different in that the demolition work required immediate work to

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

811513.03/SD

1 prevent damage to the Property whereas the restoration work had no such urgency.

2 Moreover, the Receiver made it clear Interstate would not be paid for the restoration

3 work without a signed contract.

4      Second, Interstate alleges its reliance was justified given "the Receiver's self-

5 affirmed role as loss payee for the insurance company[.]"  (FAC ¶ 57.)  This

6 argument is belied by the express allegations in the FAC.  When Interstate

7 approached the Receiver regarding the restoration contract, the Receiver expressly

8 told Interstate that MPFC III was selling the Trace loan to NuView and "NuView,

9 and not the Receiver, would acknowledge the formal written agreement as loss

10 payee[.]"  (FAC ¶ 32.)  This statement was made during the same conversation

11 Interstate purports to have relied upon in commencing the restoration work.

12 Interstate cannot pick and choose isolated sentences or phrases from a series of

13 communications to rely on while ignoring others.

14      Third, Interstate alleges "the fact that the Receiver communicated and

15 negotiated with Interstate regarding the Restoration Work, and consistently affirmed

16 that it possessed the insurance proceeds and would transfer them upon the execution

17 of the final contract with Crowe" shows that its reliance was reasonable.

18 (FAC ¶ 57.)  Interstate points to the Receiver's statements in April and May 2011.

19 (FAC ¶¶ 51-54.)  As the Court noted, the commencement of the restoration work

20 allegedly occurred before the May 27th statement so it is irrelevant to the reliance

21 issue.  (Order at p. 9)  Regardless, the purported statements do not support

22 reasonable reliance.  Instead, they demonstrate that every time Interstate approached

23 the Receiver regarding the restoration contract, the Receiver made clear he would

24 not be a party to the contract, that the contract needed to be executed before

25 Interstate could be paid, that MPFC III was selling the Trace loan to NuView, and

26 that NuView, as loss payee, would ultimately pay Interstate.  (FAC ¶¶ 30, 32, 34.)

27 Likewise, Crowe's May 4, 2011, email shows it was both unreasonable and

28 unforeseeable for Interstate to start the restoration work without an executed

1   contract.  When Interstate sent the Receiver a request for a down payment for the

2   restoration work, Crowe responded by requesting a "time-out" until the transfer of

3   the ownership was completed and hoped Interstate understood NuView could not

4   issue any new contracts at the time.[1]  (FAC ¶ 35.)

5       Any reliance on the Receiver's February 25, 2011 email is also unreasonable.

6   At the time the email was sent, the parties were negotiating the demolition work, not

7   the restoration work.  (FAC ¶¶ 14, 25.)  Thus, any assurances regarding the

8   Receiver's role as loss payee was limited to the emergency demolition work.  The

9   Receiver made this fact clear when, in response to Interstate's inquiry about the

10  restoration contract, he informed Interstate that NuView, as loss payee, would pay

11  Interstate for the restoration work.  (FAC ¶ 32.)

12      Fourth, Interstate alleges its reliance was reasonable based on the Receiver's

13  responsibility for approving Interstate's proposed scope of work and the terms of the

14  restoration work.  (FAC ¶ 57.)  The Receiver's involvement in initial discussions

15  regarding the scope of the restoration work does not make Interstate's reliance

16  reasonable, especially given the Receiver's continuous clarification that he would

17  not be a party to the contract and the contract would be between Trace, NuView,

18  and Interstate.  (FAC ¶¶ 29, 30, 32.)

19      Fifth, Interstate alleges its reliance was foreseeable and reasonable because

20  "the Receiver had actual knowledge that Interstate had commenced the Restoration

21  Work[.]"  (FAC ¶ 57.)  While Interstate alleges it informed the Receiver in late

22  April 2011 it would "move, and was moving, forward with the Restoration Work

23  before the sale of the Trace assets was completed," Interstate fails to allege it ever

24  informed the Receiver it had in fact commenced the restoration work.  (FAC ¶ 33.)

25

26  [1]  To the extent Interstate relies on its follow up conversation with Crowe which it
    alleges clarified it should move forward with preliminary aspects of the

27  restoration work, reliance on any statements by the Receiver is still unjustified
    and unforeseeable.  There are no allegations suggesting the Receiver was part of

28  the conversation or knew Interstate would continue moving forward with
    preliminary aspects of the work after Crowe expressly requested a time-out.

1    Moreover, there was no reason for the Receiver to believe Interstate had

2    commenced the restoration work when only days later, on May 4, 2011, Crowe

3    requested a time-out.  (FAC ¶ 34.)

4         To the extent Interstate alleges its reliance was reasonable or foreseeable

5    because the Receiver's representations regarding payment of the insurance proceeds

6    were neither contingent nor speculative because the Loan Sale Contract was

7    executed in early April 2011, it still fails to allege reasonable reliance.  The Loan

8    Sale Contract authorized the Receiver to use the insurance proceeds to repair

9    property owned by Trace or as a credit towards the purchase price.  (RJN, Ex. B,

10   § 8.16.)  Thus, at the time the Loan Sale Contract was executed, it was uncertain

11   how the insurance proceeds would be used.  Moreover, as the Court noted in its

12   Order, the promise to transfer the funds was dependent on an ultimate deal with

13   NuView.  (Order at p. 11.)  At the time the alleged statements were made, there was

14   no guarantee the Court would approve the sale or the sale would close.

15                   2.    *The FAC Fails to Plead Causation*

16        In its Order, the Court concluded it was "not plausible from the face of the

17   complaint that the Receiver caused the harm that Interstate suffered."  (Order at

18   p. 11.)  In response, Interstate continues to allege the Receiver induced it to enter

19   into the restoration contract and, thus, caused its harm.  (FAC ¶ 59.)  As noted in the

20   Court's Order, "Interstate's ultimate injury is that it was not paid for its work," and

21   not that it entered into the restoration contract.  (Order at p. 11.)  Accordingly,

22   "Interstate's real dispute is with NuView, the party with whom it contracted" and the

23   party ultimately responsible for paying Interstate.  (*See id.*; *see also* RJN Ex. D at

24   ¶¶ 13, 21.)  "Interstate attempts to skirt the issue by arguing that its harms were

25   beginning the construction project and entering into a contract with NuView."

26   (Order at p. 11.)  As the Court has already held, "these descriptions do not change

27   the reality: Interstate wants to be paid for its work."  (*Id.*)  The entities responsible

28

1    for paying Interstate were Trace and NuView, not the Receiver.  Accordingly,

2    Interstate has not alleged facts showing the Receiver caused its alleged harm.

3         Interstate has twice failed to state a claim for promissory estoppel.  It cannot

4    state such a claim because it cannot allege reasonable reliance or causation.  This

5    cause of action should be dismissed with prejudice.

6    **D.**     **Interstate's Intentional Misrepresentation and False Promise**

7         **Claims Fail**

8         Through its third and fourth claims for relief, Interstate alleges the Receiver

9    committed fraud by falsely representing in late April 2011 he would transfer the

10   insurance proceeds to NuView in connection with the impending sale of the Trace

11   loan and on May 27, 2011, that the insurance funds were transferred.  (FAC ¶¶ 62,

12   65-68.)  These claims fail for several reasons.

13        To begin with, the FAC does not make clear the Receiver's purported

14   representations were false.  (*See* Order at p. 12.)  Indeed, as stated in the Court's

15   Order, "NuView's using the $900,000 as a credit against the purchase of the Texas

16   Property assets does not render the statement false on the alleged facts."  (*Id*.) "The

17   Receiver did transfer the funds in the sense that he put them in NuView's control,

18   and NuView then used those funds to pay the Receiver."  (*Id*.)

19        Regardless, these claims suffer from the same problems affecting Interstate's

20   promissory estoppel claim.  Specifically, the FAC fails to allege facts showing

21   reasonable reliance and causation.  As discussed above, each and every basis

22   Interstate relies on to establish reasonable reliance fails.  The Receiver repeatedly

23   told Interstate he would not be a party to the contract, MPFC III was selling the

24   Trace loan to NuView, NuView would be the loss payee, and NuView would

25   ultimately pay Interstate.  (FAC ¶¶ 30, 32, 34.)  Crowe confirmed NuView would

26   issue the restoration work contract and specifically requested a time-out until the

27   loan sale closed and the contract was signed.  (FAC ¶ 35.)  Accordingly, the FAC

28   fails to allege facts supporting reasonable reliance.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

811513.03/SD

Further, the FAC fails to allege facts showing the Receiver's alleged conduct was the cause of its injury.  To the contrary, Interstate admits: (1) it entered into a written agreement with NuView for the completion of the restoration work; (2) NuView promised Interstate would be paid, and (3) NuView failed to compensate Interstate as promised.  (FAC ¶ 38; RJN Ex. D at ¶¶ 13, 21.)  Interstate has not, and cannot, allege that the Receiver had any control over what Trace or NuView did with any funds in their possession.  Therefore, the FAC fails to allege facts establishing the Receiver's alleged statements concerning insurance proceeds actually caused Interstate any harm.[2]

**E.      Interstate's Negligent Misrepresentation Claim Fails**

Interstate's negligent misrepresentation claim is essentially the same as its fraud claims, except Interstate asserts the Receiver's purported representations were negligent, rather than intentional.  This claim should be dismissed for the same reasons as the fraud claims.  Specifically, the FAC fails to allege facts demonstrating Interstate reasonably relied on the Receiver's purported statements or that the alleged harm was caused by the Receiver's conduct, both required elements of a negligent misrepresentation claim.  *Fox v. Pollack*, 181 Cal.App.3d 953, 962 (1986).

Further, insofar as this claim is based on the Receiver's purported April 2011 statements, the Court has already rejected the notion that a negligent misrepresentation claim may be based on a false promise.  (*See* Order at p. 13; *see also Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 159 (1991) ("[A]n action based on a false promise is simply type of an *intentional* misrepresentation, *i.e.*, actual fraud.  The specific intent requirement also precludes

---

[2]   Interstate's reliance on the Receiver's May 27, 2011 email to support its false promise claim is inapposite.  As the Court concluded in its Order, "[t]he May 27, 2011 statement does not appear from the facts of the Complaint to be a promise[.]"  (Order at p. 11.)  The allegations in the FAC does nothing to change this conclusion.

1   pleading a false promise claim as a negligent misrepresentation . . .  Moreover, we

2   decline to establish a new type of actionable deceit; the negligent false promise.")

3   (emphasis in original); *IMACC Corp. v. Nat'l Union Fire & Ins. Co. of Pittsburg*,

4   1998 U.S. Dist. LEXIS 17620, *22 (N.D. Cal. Oct. 5, 1998) ("A negligent

5   misrepresentation claim, however, cannot be based on a false promise.").  As

6   explained above, at the time the Receiver purportedly made the statements regarding

7   his intention to transfer the insurance proceeds to NuView, how the insurance

8   proceeds would be used was still uncertain.  The Loan Sale Contract authorized the

9   Receiver to use the insurance proceeds to repair property owned by Trace or as a

10  credit towards the purchase price.  (RJN, Ex. B, § 8.16.)

11      Moreover, Interstate fails to plead facts showing the Receiver had a duty of

12  care with regard to his May 27, 2011 email.  "Under California law, a party engaged

13  in a commercial or business interaction generally owes a duty of care to other parties

14  engage in the same commercial endeavor or course of business dealings.  [citation]

15  However, that duty only exists where a party has 'a pecuniary interest in the

16  transaction in which the information is given.'  [citation]  'If he has no pecuniary

17  interest and the information is given purely gratuitously, he is under no duty to

18  exercise reasonable care and competence in giving it.'"  (Order at p. 13; *see also*

19  *Freidman v. Merck & Co.*, 107 Cal. App. 4th 454, 482 (2003); Res. 2d Torts § 522.)

20  As noted in the Court's Order, "the statement by the Receiver that he had transferred

21  all the insurance funds was made *after* the Receiver sold its interest to NuView."

22  (Order at p. 13 [emphasis in original]; FAC ¶ 89.)

23      Thus, the Court should dismiss this claim with prejudice.

24  **F.      Interstate's Unjust Enrichment and Constructive Trust Claims Fail**

25      This Court has already concluded that to maintain its claims for unjust

26  enrichment and constructive trust, Interstate must associate these claims with a

27  proper cause of action.  (*See* Order at p. 14.)  Interstate fails to plead an underlying

28

1   cause of action upon which these claims may be based.  Accordingly, these claims

2   should be dismissed.

3        Moreover, the unjust enrichment claim fails for the independent reason that

4   Interstate does not plead facts demonstrating the Receiver or the receivership estate

5   was enriched as a result of, or benefitted in any way from, Interstate's alleged injury.

6   The receivership estate received the fair market value for the loan.  Trace and

7   NuView received the benefit of Interstate's restoration work.

8        The constructive trust claim also fails because the FAC does not allege facts

9   showing the Receiver wrongfully obtained any funds.  To the contrary, the Loan

10  Sale Contract approved by the Court specifically authorized the Receiver to use the

11  insurance proceeds to either pay for the restoration work or as a credit towards the

12  purchase price paid by NuView.  (RJN, Ex. B, § 8.16.)

13                                  **IV.**

14          **THE COURT SHOULD GRANT THE RECEIVER'S**

15            **MOTION TO STRIKE PUNITIVE DAMAGES**

16       The law does not favor punitive damages and, therefore, punitive damages are

17  awarded with the greatest of caution.  *Beck v. State Farm Mut. Auto. Ins. Co.*,

18  54 Cal.App.3d 347, 355 (1976); *see Alcarez v. Wachovia Mortgage FSB*, 2009 U.S.

19  Dist. LEXIS 34009, *32 (E.D. Cal. Jan. 21, 2009) (acknowledging that punitive

20  damages are "disfavored by the law, and should be granted with the greatest of

21  caution and only in the clearest of cases").  Due to the gravity of punitive damages

22  claims, California law imposes strict requirements on a plaintiff seeking punitive

23  damages.  Under California Civil Code section 3294, a plaintiff may recover

24  punitive damages only where it establishes by clear and convincing evidence that

25  the defendant has acted with "oppression, fraud or malice."  Cal. Civ. Code § 3294;

26  *Lunsford v. Am. Guar. & Liab. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) (holding that a

27  plaintiff must establish the right to recovery of punitive damages by clear and

28  convincing evidence).  Section 3294 includes the following definitions:

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

811513.03/SD

-18-

1. "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

2. "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

3. "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

Cal. Civ. Code § 3294.3.

Here, Interstate cannot allege a valid cause of action, let alone show the Receiver's conduct rose to the level of "malice, oppression or fraud."  Further, to the extent Interstate is seeking punitive damages based on its breach of contract claim, such damages are not recoverable.  *Boles v. Mercorp, Inc.*, 2008 U.S. Dist. LEXIS 115688, *12 (C.D. Cal. Dec. 12, 2009) ("Punitive damages are not recoverable for breach of contract claims even if the defendant's conduct was 'willful, fraudulent, or malicious.'")  Thus, Interstate's request for punitive and exemplary damages should be stricken.

## V.

## LEAVE TO AMEND SHOULD BE DENIED

The Court should deny Interstate leave to amend.  Interstate has had two opportunities to state a claim for relief against the Receiver and has twice failed to do so.  Interstate's FAC only reinforces the deficiencies inherent in its claims against the Receiver.  The Court should not hesitate to dismiss the FAC *with prejudice* because amendment would be futile.  *Townsend v. Univ. of Alaska*, 543 F.3d 478, 485 (9th Cir. 2008); *Sami v. Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 38466, *32-33 (N.D. Cal. Mar. 21, 2012).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VI.**

**CONCLUSION**

Based on the foregoing, the Receiver respectfully requests the Court dismiss the FAC and do so *with prejudice*.  The FAC suffers from fundamental flaws that cannot be cured by amendment.  Further, because Interstate has failed to allege the Receiver's purported conduct rose to the level of malice, oppression or fraud, the Court should strike Interstate's request for punitive and exemplary damages.

Dated:  November 8, 2013

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP


By:_____*/s/ Ted Fates*_____
        TED FATES
        Attorneys for Receiver
        Thomas A. Seaman